IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

JUAN PEREZ-BARRAZA;

    Plaintiff,

v.

LEO STRAND, in his individual capacity; and
GARY JOHNSON, in his individual capacity.

    Defendants.

---

### COMPLAINT AND DEMAND FOR A JURY TRIAL

---

Plaintiff, Juan Perez-Barraza, for his Complaint and Jury Demand, states and alleges as follows:

### THE PARTIES

1. Plaintiff Juan Perez-Barraza is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein.

2. Defendant Leo Strand is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Strand is sued in his individual capacity as a police officer in the Manitou Springs Police Department.

3. Defendant Gary Johnson is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Johnson is

1

sued in his individual capacity as a police officer in the Manitou Springs Police Department.

**JURISDICTION AND VENUE**

4. This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Therefore, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331(a) and 1343, the Fourth Amendment United States Constitution, and over the parties pursuant to 28 U.S.C. § 1391(b) because this action arises from the commission of tortious acts within the State of Colorado, by residents of the State of Colorado.

5. Additionally, this Court has jurisdiction over Colorado state law claims under 28 U.S.C. § 1367(a) as the allegations underlying Plaintiff's federal claims are the same as those underlying his Colorado state law claims.

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the District Court in and for the District of Colorado because the conduct complained of occurred within the City of Manitou Springs which is within the District of Colorado.

**ALLEGATIONS**

7. At around 6:00 a.m. on April 24, 2023, Plaintiff Juan Perez-Barraza called 911 because he was having trouble breathing and his heart beat didn't feel normal.

8. The 911 operator then sent paramedics and called the Manitou Springs police to perform a wellness check on Mr. Perez.

9. Shortly thereafter, Defendants Leo Strand and Gary Johnson arrived at the motel at which Mr. Perez was staying.

10. At this time, Mr. Perez had committed no crime, was suspected of no crime, and was in no way subject to arrest or suspicion.

11. Nonetheless, Defendant Strand immediately threatened Mr. Perez.

12. Having been beaten by police in the past and fearing Defendant Strand, Mr. Perez immediately ran to the patio in front of the motel office where he knew that security cameras would capture his interaction.

13. He did this because he feared being beaten once again by police who had always refused to engage their body-worn cameras which would capture their misconduct.

14. Defendants Strand and Johnson, both equipped with body-worn cameras, proved this fear correct and never turned their body-worn cameras on.

15. When Mr. Perez began to run, he had committed no crime, was under no orders to remain, was not subject to arrest, and was a threat to no individual.

16. Indeed, it was Defendants Strand and Johnson who had threatened Mr. Perez, an hispanic man, when all he sought was help.

17. Defendant Strand had no basis to chase Mr. Perez nor to place him under arrest.

18. Mr. Strand chased Mr. Perez without cause.

19. Mr. Strand then grabbed Mr. Perez and placed him under arrest without cause.

20. Mr. Perez knocked on the windows looking for someone to intervene in what was about to become yet another instance of police brutality.

21. In doing so, Mr. Perez accidentally broke a window.

22. Mr. Strand then threw Mr. Perez violently to the ground.

23. As Mr. Perez hit the ground, Mr. Johnson ran in and punched Mr. Perez in the face.

3



24. Mr. Perez had been falsely placed under arrest and subjected to force without probable cause.

25. Moreover, at this point in time, there was no indication that any use of force was necessary.

26. Nonetheless, Defendants Strand and Johnson proceeded to kick and punch Mr. Perez, including several punches to the face by Mr. Johnson.

27. After approximately 15 seconds, Defendants stopped their first beating of Mr. Perez.

28. Throughout this violent beating, Mr. Perez screamed for help.

29. When the officers stopped, Mr. Perez laid on his back with his hands together.

4



30. Mr. Perez took no further action, laying on this back with his hands together where Defendants Strand and Johnson could see them for several minutes.

31. Mr. Perez did not threaten these officers.

32. Mr. Perez did not resist arrest.

33. Mr. Perez did not use force or violence on these officers.

34. Mr. Perez simply pleaded for help.

35. The officers demanded that Mr. Perez get on his stomach, but fearing for his safety against these officers who thought that no camera was capturing their conduct, Mr. Perez did not move.

36. At no time was Mr. Perez resisting arrest.

37. At no time was Mr. Perez committing a crime.

38. At no time was Mr. Perez a threat to any individual.

39. Nonetheless, Defendants decided that anything less than complete compliance with their demands allowed them to use whatever force they desired.

40. First, Defendant Strand placed his knee on Mr. Perez's neck, just as Derek Chauvin had done in killing George Floyd, Jr.



41. While choking Mr. Perez in violation of C.R.S. 18-1-707 and Manitou Springs Use of Force policy, Mr. Strand placed Mr. Perez in handcuffs.

42. Mr. Perez did not resist this and simply laid there.

43. Next, because Defendants preferred to handcuff Mr. Perez behind his back, Defendants Strand and Johnson began their second campaign of brutality.

44. Over the next minute, both Defendant Strand and Defendant Johnson repeated kicked and punched Mr. Perez, a man suffering a health condition.

6



45. After Defendants placed Mr. Perez in handcuffs, they intentionally contorted his body and sat on him, causing him to cry in pain for help.

46. These officers, apparently indifferent to the pain of another human being, just sat on him, continuing to cause pain to which they knew they were subjecting him.

47. And this pain was caused while Mr. Perez was completely incapacitated.

48. Throughout this entire encounter, neither Defendant took any step to intervene and stop their partner from committing police brutality. Instead, they teamed up to beat on a man having a medical emergency, laying on the ground with his hands where the officers could see them.

49. After finishing their beating of Mr. Perez, Defendants then conducted a warrant check and found an open warrant for Mr. Perez's arrest.

50. Defendants then began the work of covering up their misconduct.

51. Defendants first lied in their reports that they had checked on Mr. Perez's warrant status prior to contact.

52. Defendants then charged Mr. Perez with criminal mischief and obstructing a police officer, even though both knew that there were not facts sufficient to support either charge.

53. These charges were later dismissed in Mr. Perez's favor.

54. Defendants failed to produce any use of force report, even through both Defendants had clearly used force throughout their beating of Mr. Perez and Manitou Springs Police Department policy required such reporting.

55. And of course, although both Defendants were outfitted with body-worn cameras to capture their conduct and allow for review, both Defendants had intentionally never engaged their body-worn cameras.

56. Fortunately Mr. Perez had the insight to run to a place where he knew a security camera would capture his interaction with these officers.

57. Otherwise, their brutality would have gone unrecorded.

58. There was no investigation of the misconduct of these officers because they covered their tracks.

59. However, Mr. Perez later obtained the security camera footage. That footage shows the cruelty of two officers who thought that their conduct was being done in the dark.

## CAUSES OF ACTION

### COUNT I:
### 42 U.S.C. 1983 - Excessive Force

60. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

61. Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the MSPD at all times relevant to the allegations in this Complaint.

62. Defendants are "persons" under 42 U.S.C. § 1983.

63. Plaintiff had a protected Fourth Amendment interest against being victimized by the use of excessive force at the hands of law enforcement personnel.

64. Defendants did not have, at any time, a legally valid basis to seize Plaintiff.

65. Defendants unlawfully seized Plaintiff by means of excessive physical force.

66. Defendants had no warrant authorizing any seizure of Plaintiff.

67. Each Defendant failed to intervene to prevent the other Defendants from violating Plaintiff's constitutional rights and is thereby liable for such failure to intervene.

68. Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

69. Plaintiff had committed no crime (nor could any of the Defendants have reasonably believed he had committed any crime) that would legally justify arrest or detention, Plaintiff gave the officers no reason to fear for their safety, Plaintiff was obviously unarmed, and Plaintiff was not resisting arrest or fleeing.

70. Defendants did not have a legally valid basis to seize Plaintiff in the manner and with

the level of force used under the circumstances presented.

71. Defendants' actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them.

72. At the time when Defendants used excessive force against Plaintiff, Plaintiff had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure from unreasonable seizure through excessive force. Any reasonable law enforcement officer knew or should have known of this clearly established right.

73. Defendants engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally protected rights.

74. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described herein, Plaintiff suffered injuries, damages, and losses.

75. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the vigil, and other compensatory and special damages.

76. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**COUNT II:**
**C.R.S. 13-21-131 - Excessive Force**

77. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

78. Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the MSPD at all times relevant to the allegations in this Complaint.

79. Defendants were peace officers under C.R.S. 24-31-901(3) at all times relevant to the allegations in this Complaint.

80. Plaintiff had a protected interest against being victimized by the use of excessive force at the hands of law enforcement personnel.

81. Defendants did not have, at any time, a legally valid basis to seize Plaintiff.

82. Defendants unlawfully seized Plaintiff by means of excessive physical force.

83. Defendants had no warrant authorizing any seizure of Plaintiff.

84. Each Defendant failed to intervene to prevent the other Defendants from violating Plaintiff's constitutional rights and is thereby liable for such failure to intervene.

85. Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

86. Plaintiff had committed no crime (nor could any of the Defendants have reasonably believed they had committed any crime) that would legally justify arrest or detention, Plaintiff gave the officers no reason to fear for their safety, Plaintiff was obviously unarmed, and Plaintiff was not resisting arrest or fleeing.

87. Defendants did not have a legally valid basis to seize Plaintiff in the manner and with the level of force used under the circumstances presented.

88. Defendants' actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them.

89. At the time when Defendants used excessive force against Plaintiff, Plaintiff had a clearly established constitutional right under the Colorado Constitution to be secure from unreasonable seizure through excessive force. Any reasonable law enforcement officer knew or should have known of this clearly established right.

90. Defendants engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally protected rights.

91. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described herein, Plaintiff suffered injuries, damages, and losses.

92. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the vigil, and other compensatory and special damages.

93. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and the Constitution of the state of Colorado.

**COUNT III:**
**42 U.S.C. 1983 - Malicious Prosecution**

94. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

95. Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the MSPD at all times relevant to the allegations in this Complaint.

96. Defendants initiated and continued the case without proper purpose and based on fabrication.

97. At the time when Defendants engaged in malicious prosecution against Plaintiff, Plaintiff had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure from malicious prosecution. Any reasonable law enforcement officer knew or should have known of this clearly established right.

98. Defendants played important roles in the filing of charges against Ms. PPerez.

99. The case was ultimately dismissed in Ms. Perez's favor.

100. Mr. Perez suffered injuries as a direct and proximate result of Defendants' conduct.

## COUNT IV:
## C.R.S. 13-21-131 - Malicious Prosecution

101. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

102. Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the MSPD at all times relevant to the allegations in this Complaint.

103. Defendants were peace officers under C.R.S. 24-31-901(3) at all times relevant to the

allegations in this Complaint.

104. Defendants initiated and continued the case without proper purpose and based on fabrication.

105. Defendants played important roles in the filing of charges against Ms. PPerez.

106. The case was ultimately dismissed in Ms. Perez's favor.

107. Mr. Perez suffered injuries as a direct and proximate result of Defendants' conduct.

## COUNT V:
## 42 U.S. C. 1983
## 42 U.S.C. 1983 - False Arrest

108. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

109. Defendants knew that Mr. Perez had not committed no crime.

110. Defendants manufactured a basis for arresting Mr. Perez instead.

111. Owing to this, Defendants knew that they lacked probable cause to arrest Mr. Perez.

112. Nonetheless, Defendants arrested Mr. Perez.

113. At the time when Defendants arrested Mr. Perez under false chages, Plaintiff had a clearly established constitutional right under the Colorado Constitution to be secure from being falsely charged with a crime. Any reasonable law enforcement officer knew or should have known of this clearly established right.

114. Mr. Perez suffered injuries as a direct and proximate result of Defendants' conduct.

## COUNT VI:
## C.R.S. 13-21-131 - False Arrest

115. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

116. Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the MSPD at all times relevant to the allegations in this Complaint.

117. Defendants were peace officers under C.R.S. 24-31-901(3) at all times relevant to the allegations in this Complaint.

118. Defendants knew that Mr. Perez had not committed no crime.

119. Defendants manufactured a basis for arresting Mr. Perez instead.

120. Owing to this, Defendants knew that they lacked probable cause to arrest Mr. Perez.

121. Nonetheless, Defendants arrested Mr. Perez.

122. Mr. Perez suffered injuries as a direct and proximate result of Defendants' conduct.

## CLAIM VII
## 42 U.S. C. 1983
## 42 U.S.C. 1983 - Failure to Intervene

123. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

124. Defendants Strand and Johnson watched each other repeated kick and punch Mr. Perez in violation of Mr. Perez's right to be free from excessive force under the Fourth Amendment.

125. Each Defendant knew that his partner was engaging in excessive force in violation of the Fourth Amendment.

126. Each officer observed the other engaged in this violation of Mr. Perez's constitutional rights under the Fourth Amendment.

127. Each Defendant could have intervened to stop the other officer from kicking and

punching Mr. Perez, but neither did.

128. Instead, they joined together to punch both his head and his back at the same time.

129. At the time when Defendants failed to intervene in their partner's use of excessive force against Plaintiff, Plaintiff had a clearly established constitutional right under the Colorado Constitution to the intervention by such other officer. Any reasonable law enforcement officer knew or should have known of this clearly established right.

130. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

131. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

132. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

## CLAIM VIII
### C.R.S. 13-21-131 - Failure to Intervene

133. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

134. Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the MSPD at all times relevant to the allegations in this Complaint.

135. Defendants were peace officers under C.R.S. 24-31-901(3) at all times relevant to the allegations in this Complaint.

136. Defendants Strand and Johnson watched each other repeatedly kick and punch Mr. Perez in violation of Mr. Perez's right to be free from excessive force under the Fourth Amendment.

137. Each Defendant knew that his partner was engaging in excessive force in violation of the Fourth Amendment.

138. Each officer observed the other engaged in this violation of Mr. Perez's constitutional rights under the Fourth Amendment.

139. Each Defendant could have intervened to stop the other officer from kicking and punching Mr. Perez, but neither did.

140. Instead, they joined together to punch both his head and his back at the same time.

141. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

142. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

143. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

WHEREFORE, Plaintiff prays for relief as follows:

1. Declaratory relief and other appropriate equitable relief;

2. Economic losses on all claims as allowed by law;

3. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

4. Punitive damages on all claims allowed by law and in an amount to be determined at trial;

5. Attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988 and C.R.S. 13-21-131 including expert witness fees, on all claims allowed by law;

6. Pre-and post-judgment interest at the lawful rate; and

7. Any other appropriate relief at law and equity that this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues triable.

Respectfully submitted this 22nd day of April 2023.

E. Milo Schwab
E. Milo Schwab
2401 S Downing
Denver, CO 80210
(303) 888-4407
milo@ascendcounsel.co

**ATTORNEY FOR PLAINTIFF**
